IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EDNA J. ROBERTS                                                          PLAINTIFF

           v.              Civil No. 2:12-cv-02083-RTD-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.        Factual and Procedural Background**

Plaintiff, Edna J. Roberts, brings this action seeking judicial review, pursuant to 42 U.S.C.

§ 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her applications for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed her applications on September 25, 2008, alleging a disability onset

date of January 1, 2007, due to obesity, back disorder, neck pain, status post bilateral carpal tunnel

release, borderline intellectual functioning, bipolar disorder/mood disorder, personality disorder,

anxiety, and depression. Tr. 17, 188. On the alleged onset date, Plaintiff was twenty-eight years old

with a ninth grade special education. Tr. 24-25, 43, 193, 648. Her date last insured for DIB

purposes was June 30, 2007. Tr. 184.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 85-91, 105-

108. At Plaintiff's request, an administrative hearing was held on October 29, 2009. Tr. 37-80.

Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable

decision on April 16, 2010, finding Plaintiff was not disabled within the meaning of the Act. Tr. 12-

26. Subsequently, the Appeals Council denied Plaintiff's Request for Review on February 13, 2012, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Plaintiff now seeks judicial review of that decision.

## II.  Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities;

(3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## III.   <u>ALJ's Determination</u>

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since January 1, 2007, the alleged onset date. Tr. 17. At step two, the ALJ found Plaintiff suffers from the following severe impairments: back disorder, status post carpal tunnel release, obesity, borderline intellectual functioning, bipolar disorder and/or mood disorder, personality disorder, and substance abuse. Tr. 17. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18-20.

At step four, the ALJ found Plaintiff had the RFC to lift/carry twenty pounds occasionally and ten pounds frequently, sit for about six hours during an eight-hour workday, stand and walk for about six hours in an eight-hour workday, frequently handle and finger, and occasionally perform rapid and repetitive flexion and extension of her wrists. Tr. 20-24. Mentally, the ALJ determined Plaintiff could understand, remember, and carry out simple, routine, and repetitive tasks, and respond appropriately to supervision, coworkers, and usual work situations, but could have only occasional

contact with the general public.  Tr. 20-24.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work.  Tr. 24.  However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1]  Accordingly, the ALJ determined Plaintiff was not under a disability from January 1, 2007, the alleged onset date, through April 16, 2010, the date of the administrative decision.  Tr. 26.

## IV.   Discussion

On appeal, Plaintiff contends the ALJ erred by: (A) failing to fully and fairly develop the record; (B) failing to properly evaluate her obesity; (C) improperly discounting her credibility; (D) improperly determining her RFC; and (E) failing to include all of her limitations in the hypothetical question posed to the vocational expert.  *See* Pl.'s Br. 9-17.  The Commissioner submits that substantial evidence supports the ALJ's determination.  *See* Def.'s Br. 5-18.  For the following reasons, the undersigned finds that substantial evidence supports the ALJ's decision.

### A.   Development of the Record

Plaintiff contends the ALJ should have obtained: (1)  a consultative physical examination *or* a medical source statement from Plaintiff's treating physician, Dr. Carney; and (2) a medical source statement concerning Plaintiff's mental limitations.  *See* Pl.'s Br. 9-11.  The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel.  *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998).  "It is well-settled that the ALJ's duty to fully and fairly develop the

---

[1] The ALJ determined Plaintiff could perform the requirements of representative occupations such as assembly worker, of which there are 7,535 jobs regionally and 424,145 jobs nationally, machine tender, of which there are 3,570 jobs regionally and 317,181 jobs nationally, and motel cleaner, of which there are 3,792 jobs regionally and 431,391 jobs nationally.  Tr. 25, 67-68.

-4-

record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

In this instance, the undersigned finds that the ALJ fully and fairly developed the record. An ALJ is not required to order a consultative evaluation; he "simply has the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir. 1989); *see also Haley v. Massanari,* 258 F.3d 742, 749 (8th Cir. 2001) (ALJ need not order additional examinations if there is substantial evidence in the record to make an informed decision). Additionally, an ALJ is only required to recontact a treating physician if a critical issue is undeveloped. *Johnson v. Astrue,* 627 F.3d 316, 320 (8th Cir. 2010). Here, the ALJ denied Plaintiff's request for an orthopedic evaluation because various diagnostic imaging studies of Plaintiff's spine were unremarkable and physical examinations did not substantiate Plaintiff's allegations of disabling back and neck pain. Tr. 24, 264, 428, 444, 452. Moreover, Plaintiff only received conservative treatment for her alleged neck pain and was never referred to physical therapy or a specialist. *See Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2000) (conservative treatments were inconsistent with claimant's alleged disabling pain).

The ALJ also declined to order further psychological testing following Dr. Walz's November 26, 2008 psychological evaluation.  Tr. 24.  Although Plaintiff was hospitalized for psychiatric symptoms from September 11, 2009, through September 14, 2009, she left UAMS against medical advice and did not follow through with recommended treatment.  *Guilliams v. Barnhart,* 393 F.3d 798, 803 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility).  Furthermore, UAMS records indicate that Plaintiff's symptoms rapidly resolved during her stay.  Plaintiff ranked her depression and anxiety at "zero" prior to discharge and reported improved sleep, energy, and concentration.  Tr. 564.  *See Brown v. Barnhart,* 390 F.3d 535, 540 (8th Cir. 2004) (an impairment that can be controlled by treatment or medication cannot be considered disabling).  Following discharge, Plaintiff received medications through her primary care physician, but did not seek further mental health treatment.  As such, Plaintiff has not shown a significant change in her condition which would warrant further psychological evaluation.

The ALJ had sufficient evidence to rely on in making his RFC determination.  *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment).  Moreover, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record.  *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the record).  Accordingly, the undersigned finds that the ALJ satisfied his duty to fully develop the record.

### B.  Obesity

Plaintiff contends the ALJ failed to properly evaluate her obesity.  *See* Pl.'s Br. 11-12.  The ALJ determined Plaintiff's obesity was a "severe" impairment that had more than a minimal effect

-6-

upon her ability to perform basic work activities.  Tr. 17.  Moreover, the ALJ expressly stated that he considered Plaintiff's obesity in accordance with SSR 02-1p, which sets forth the guidelines for evaluating obesity, but determined there was no evidence that Plaintiff's obesity resulted in an inability to ambulate effectively or perform routine movement and necessary physical activity within the work environment.  Tr. 18, 22.  *See* SSR 02-1p, 2000 WL 628049 (September 12, 2002).  The evidence of record supports this determination.  No physician placed any obesity-related restrictions on Plaintiff.  Additionally, Plaintiff's activities of daily living, including her ability to ride an all-terrain vehicle, are inconsistent with her allegations of obesity-related limitations.  Tr. 522.  The ALJ limited Plaintiff to light work, which properly accounts for any limitations associated with her obesity.  As such, the undersigned finds no error.

C. Credibility

Plaintiff argues that the ALJ improperly evaluated her credibility.  *See* Pl.'s Br. 12-13.  When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them."  *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792).  However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole.  *Id.*  A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain."  *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

-7-

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)).  Contrary to Plaintiff's blanket assertion, the ALJ properly considered her subjective complaints and dismissed them for legally sufficient reasons.

With regard to activities of daily living, the ALJ noted that Plaintiff made inconsistent statements concerning her activities.  Tr. 21.  Plaintiff testified at the administrative hearing that she could not perform any household chores.  Tr. 21, 63.  However, Plaintiff previously reported that she could clean, do laundry, make beds, and cook for her children.  Tr. 21, 197-199.  Moreover, Plaintiff reported to Dr. Walz that she was able to do laundry and clean her room.  Tr. 495.  Plaintiff also reported riding an all-terrain vehicle in September 2007 and December 2008.  Tr. 423-424, 522-523. *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living).  This level of activity is simply inconsistent with Plaintiff's assertion of total disability.

The ALJ also considered the fact that Plaintiff did not seek professional mental health treatment except during her hospitalizations in 2006 and 2009, and did not follow through with treatment recommendations.  Tr. 22.  *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (claimant had not sought formal treatment by a psychiatrist, psychologist, or other mental health care professional); *see also Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (noncompliance with medical treatment).  Plaintiff testified that she cannot afford routine mental health treatment.  However, she did not seek treatment at any low-cost clinics or charitable organizations in the area,

-8-

nor has she provided evidence that she was denied medical care due to her financial situation. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).

The ALJ also took note of Plaintiff's sporadic work history, which raised suspicion as to whether her continuing unemployment was a result of her impairments.  Tr. 24.  *See Wildman v. Astrue,* 596 F.3d 959, 968-69 (8th Cir. 2010) (ALJ may consider a claimant's sporadic work history when determining credibility).  Finally, the ALJ found that Plaintiff's subjective complaints were simply inconsistent with the objective evidence in the record, which revealed normal imaging studies and conservative treatment for Plaintiff's alleged back pain.  Tr. 21-24.  *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints). Moreover, although Plaintiff complained of bilateral carpal tunnel syndrome, there are no medical records to substantiate her allegations.  Plaintiff never sought treatment for carpal tunnel syndrome during the relevant time period, nor were there any medical records pertaining to her alleged carpal tunnel release.

Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints.  *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence").  Plaintiff's argument that the ALJ first formulated the RFC and then used the RFC to discount Plaintiff's subjective complaints has no merit.  For these reasons, substantial evidence supports the ALJ's credibility analysis.

### D.  RFC Determination

Plaintiff's argues that the ALJ's RFC determination is contrary to the evidence.  *See* Pl.'s Br. 13-16. At the fourth step of the evaluation, a disability claimant has the burden of establishing her

RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

The medical evidence of record supports the ALJ's findings with respect to Plaintiff's alleged physical impairments. As previously discussed, there is no record of Plaintiff receiving treatment for her bilateral carpal tunnel syndrome during the relevant time period. Additionally, there is little objective medical evidence to support Plaintiff's allegations of significant neck and back pain. Diagnostic imaging studies of Plaintiff's spine were unremarkable. Tr. 264, 428, 444, 452. Moreover, Plaintiff received conservative treatment for her neck pain, and was never referred to physical therapy or a specialist. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (an impairment that can be controlled by treatment or medication is not considered disabling). The undersigned recognizes that Plaintiff likely experiences some back and neck pain. However, Plaintiff admittedly presented to the emergency room on several occasions for the purpose of obtaining prescription narcotics rather than to obtain treatment. Tr. 550.

Substantial evidence also supports the ALJ's analysis of Plaintiff's alleged mental impairments. Plaintiff was hospitalized for depression and suicidal ideation from December 12,

2006, through December 15, 2006, and again from September 11, 2009, through September 14, 2009.  Tr. 274-275, 542-548, 564.  During both hospitalizations, Plaintiff improved significantly once her medications were stabilized.  Tr. 274-275, 564.  In 2009, Plaintiff chose to leave UAMS against medical advice.  Tr. 542.  At the time of discharge, Plaintiff reported improved sleep and energy, ranked her depression and anxiety at "zero," and denied any suicidal or homicidal thoughts.  Tr. 564.  She received no other formal mental health treatment and did not follow through with outpatient counseling.  *See Kirby,* 500 F.3d at 709 (claimant had never sought any formal mental health treatment over a long-term basis, which he presumably would have if he were truly mentally disturbed).

In a Mental Diagnostic Evaluation dated November 26, 2008, Patricia J. Walz, Ph.D., diagnosed Plaintiff with dysthymia, history of polysubstance abuse (reportedly in remission), borderline intellectual functioning, and personality disorder with borderline and antisocial traits.  Tr. 492-498.  She estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 45-50 due to reported suicidal ideation.  Tr. 496.  Dr. Walz noted that Plaintiff could perform activities of daily living, although her social skills were somewhat impaired.  Tr. 497.  Dr. Walz found that due to suspected borderline intellectual functioning, Plaintiff would have difficulty with very complex tasks.  Tr. 497.  However, she noted that speed of information processing was average and Plaintiff persisted well.  Tr. 497.

In early 2010, Plaintiff was referred to Robert L. Spray, Jr., Ph.D., by the Division of Children and Family Services for a psychological evaluation.  Tr. 648-654.  Dr. Spray's report was submitted to the Appeals Council and made a part of the administrative record.  Tr. 4-5.  Dr. Spray administered formal intellectual functioning testing, which revealed that Plaintiff was functioning

-11-

in the low average range of intelligence.  Tr. 654.  He diagnosed Plaintiff with bipolar disorder not otherwise specified, with psychotic features, cannabis abuse (in early remission), history of prescription drug abuse, methamphetamine abuse (in long-term remission), and personality disorder not otherwise specified, with borderline and dependent features (provisional).  Tr. 653-654.  Dr. Spray noted that Plaintiff's profile on the Minnesota Multiphasic Personality Inventory-2 was invalid and grossly exaggerated.  Tr. 652.

After considering the evidence of record, the undersigned concludes that substantial evidence supports the ALJ's findings in their entirety.  Plaintiff's lack of consistent mental health treatment and minimal objective physical findings lend support to the ALJ's opinion that Plaintiff is capable of performing a limited range of light, unskilled work.

E.  Vocational Expert Testimony

Finally, Plaintiff contends the ALJ's hypothetical question did not fully account for her functional limitations.  *See* Pl.'s Br. 16-17.  A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ.  *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)).  The ALJ may properly exclude, as he did in this case, any alleged limitation or impairments he rejects as untrue or unsubstantiated.  *Hunt*, 250 F.3d at 625.  Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations ultimately adopted by the ALJ.  *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996).  For these reasons, substantial evidence supports the ALJ's step-five determination.

V.      <u>Conclusion</u>

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision and recommends that the decision be affirmed and Plaintiff's case be dismissed with prejudice.  **The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

ENTERED this 24th day of April 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-13-